UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BARRY ALVELO,

      Plaintiff,

v.                        Case No: 2:12-cv-534-FtM-29CM

SAULA JR. MENA, M. REISS, R.
HOPKINS, EBONY HARVEY, and
JOHN DOE, Medical Services
Director,

      Defendants.

_____

## OPINION AND ORDER

### I.  Status

Plaintiff Barry Alvelo initiated this action as a Florida prisoner proceeding *pro se* by filing a 42 U.S.C. § 1983 Civil Rights Complaint (Doc. #1, Complaint).  The only claims remaining are a conspiracy claim and an Eighth Amendment excessive use of force claim against defendants Mena and Reiss in their official and individual capacities,[1] and a deliberate indifference to a serious medical condition claim against defendant nurse Hopkins related to the medical treatment provided to plaintiff following the use of force in her individual capacity only.[2]  See generally

_____

[1]Defendant Reiss has not received service of process.  See docket.
[2]Defendant Ebony Harvey was dismissed with prejudice in the Court's October 18, 2013 order.  See Doc. #46 at 15.  Thus, the Clerk of Court is directed to enter judgment accordingly.

Order at Doc. #46. As relief, plaintiff seeks declaratory judgment; compensatory damages for the physical and emotional injuries plaintiff sustained as a result of defendant's failure to provide him with timely medical care; and, punitive damages. <u>Id.</u> at 19-20.

Defendants Mena and Hopkins move for summary judgment (Doc. #76, Motion). Defendants refer to the following exhibits (Doc. #76-1 at pp. 1-53) in support of their motion: Affidavit of Saulo Mena (Doc. #76-1 at 1-4); Affidavit of Bobby Thompson (<u>Id.</u> pp. 5-8); Affidavit of Saulo Mena attesting to photographs (<u>Id.</u> pp. 9-10); photographs taken by Saulo Mena at Hendry Correctional Institution (<u>Id.</u> at 9-16); Affidavit of Shirley Johnson attesting that the copies of inmate grievances are accurate (<u>Id.</u> at 16-17); copies of plaintiff's inmate grievances and responses thereto (<u>Id.</u> at 18-24); Affidavit of Leslie Rodes (<u>Id.</u> at 25-26); Office of the Inspector General's Reports concerning the use of force on September 24, 2010 (<u>Id.</u> at 27-28); Daily Records of Special Housing (<u>Id.</u> at 29-37); radiology reports dated October 5, 2010 (<u>Id.</u> at 39-41); plaintiff's medical records (<u>Id.</u> at 43-52); and response dated August 15, 2011, to plaintiff's inmate grievance (<u>Id.</u> at 53).

Defendant Mena argues that he is entitled to summary judgment as a matter of law as to the Eighth Amendment excessive force claim and conspiracy claim. Mena also raises sovereign immunity to the

extent he is sued in his official capacity and qualified immunity. Mena submits that while conducting a security check with Reiss, the officers had reason to believe plaintiff had contraband, specifically a cell phone.  Mena submits that the use of force (consisting of a bear hug and take-down) was in response to plaintiff not complying with his orders regarding the contraband and then lunging towards him and Reiss.  Further, Mena refers the Court to photographs taken of the location where the use of force occurred to show that the only way plaintiff would have landed where he did (as described in the Complaint) was if plaintiff lunged toward the correctional officers.  Regarding plaintiff's conspiracy claim, Mena argues the record does not show that defendants reached an understanding to deny the plaintiff's rights.

Defendant Hopkins also moves for summary judgment as a matter of law as to the Eighth Amendment deliberate indifference to a serious medical condition claim.  Hopkins argues that plaintiff's injuries sustained post-use-of force did not constitute serious medical conditions.  Additionally, Hopkins notes that after the use-of-force medical examination, Hopkins referred plaintiff to the dental department due to plaintiff's issue with his front tooth.  The medical records reveal that plaintiff saw the dentist two days later.  Therefore, Hopkins argues that the record does

not contain a genuine dispute of material fact concerning whether he acted with deliberate indifference.

Plaintiff filed his Response (Doc. #80, Response) opposing defendants' motion on July 28, 2014.  See docket.  Plaintiff's Response includes, in pertinent part, the following exhibits (Doc. #80-1 through #80-6, Pl's Exhs. A-F)[3]: copy of disciplinary log dated September 25, 2010 (Doc. #80-1, Pl's Exh. A at 2); Bureau of Inmate appeals response redirecting response to institution for further review (Exh. A at 3-4); form noting removal of disciplinary report and restoration of gain time (Exh. A at 5); disciplinary report worksheet submitted by Mena (Exh. A at 6); report of force used submitted by Mena (Exh. A at 7-8); defendants Saulo's and Mena's responses to plaintiff's interrogatories (Exh. A at 11-15); defendants Saulo's and Mena's response and answer to plaintiff's request for admissions (Exh. A at 16-19); defendant Hopkins response and answer to plaintiff's request for admissions (Exh. A at 20-24); defendant Marc Reiss' report of force used form dated September 25, 2010 (Exh. A at 25); plaintiff's dental treatment record and other related medical records (Doc. #80-2, Exh. B at 2-13); operative report dated April 16, 2012, after elbow surgery (Exh. B at 14); plaintiff's medical records (Exh. B at 15);

---

[3]The Court re-lettered plaintiff's exhibits for clarity purposes considering plaintiff had labeled his exhibits using certain letters more than once.

defendant nurse Hopkins post-use-of-force diagram of injury form dated September 25, 2010 (Exh. B at 16); plaintiff's pre-special housing health assessment (Exh. B at 17); witness statements from inmates Juan Cruz (Doc. #80-3, Pl's Exh. C at 2); Fransico Ventura (Pl's Exh. C at 3); Shawn Waltz (Exh. C at 4); Rene DeSantas (Exh. C at 5); Nesly Dieujuste (Exh. C at 6), Johnny Sanclez (Exh. C at 7); Joseph Kong (Exh. C at 9), Garrett Kopp (Exh. C at 10); plaintiff's statement (Exh. C at 13); documentary of physical evidence disposition form stating that a video footage was commenced after the use of force (Doc. #80-3, Pl's Exh. D at 14); Department of Corrections' table showing incident reports and related maximum disciplinary action as a result thereof (Doc. #80-4, Pl's Exh. E); and, plaintiff's medical documents concerning his elbow (Doc. #80-5, Pl's Exh. F at 2-3).  Plaintiff maintains that he complied with the officers' orders and that the officers used force on him for no reason.  With regard to the medical claim, Plaintiff faults Hopkins for delaying his dentist appointment for his fractured tooth.

Also pending before the Court is plaintiff's motion for an enlargement of time to find new address for defendant Reiss and motion to direct defendants to find a new address for service of process on defendant Reiss.  See Doc. #83, #84.  Defendants file a response opposing plaintiff's motion noting that they already searched internal records pursuant to a Court order.  The

Department's records revealed only an address that corresponded to the now closed correctional officers' housing at Hendry Correctional. Doc. #85. On February 25, 2014, plaintiff filed a motion requesting copies. Doc. #86. These matters are ripe for review.

## II. Summary Judgment Standard

"Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011) (internal quotations and citations omitted). See also, Fed. R. Civ. P. 56(c)(2). "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial." Moton, 631 F.3d at 1341 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The standard for creating a genuine dispute of fact requires the court to "make all *reasonable* inferences in favor of the party opposing summary judgment," Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (emphasis added), not to make all *possible* inferences in the non-moving party's favor. To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to

interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." Beard v. Banks, 548 U.S. 521, 529 (2006) (citations omitted); Celotex, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).  If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party.  Beard, 548 U.S. at 529 (citations omitted); Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003).  "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'"  Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted).  Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact.  Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).

### III.   Applicable Law

**A.   Eighth Amendment**

**1.   Excessive Force**

The Eighth Amendment, which applies to the states through the Fourteenth Amendment, can give rise to claims challenging the excessive use of force.  Thomas v. Bryant, 614 F.3d 1288, 1305 (11th Cir. 2010) (reviewing categories of claims under the Eighth Amendment).   An excessive-force claim requires a two-prong showing: (1) an objective showing of deprivation or injury that is "sufficiently serious" to constitute a denial of the "minimal civilized measure of life's necessities"; and, (2) a subjective showing that the official had a "sufficiently culpable state of mind."  Id. (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994) (other citations omitted).   It is the "unnecessary and wanton infliction of pain" caused by force used "maliciously and sadistically" for the very purpose of causing harm that constitutes cruel and unusual punishment.  Whitley v. Albers, 475 U.S. 312, 322 (1986).   Thus, where an Eighth Amendment claim is based upon allegations of excessive force, the question turns on whether the prison guard's "force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm."  Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) (citing Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).

To determine whether force was applied "maliciously and sadistically," courts consider the following factors: "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999) (quotations and citations omitted). When considering these factors, the courts "give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (citations omitted). The courts examine the facts as reasonably perceived by defendants on the basis of the facts known to them at the time. Whitley v. Albers, 475 U.S. at 321.

Moreover, in the context of prison discipline, a distinction is made between "punishment after the fact and immediate coercive measures necessary to restore order or security." Ort v. White, 813 F.2d 318, 324-325 (11th Cir. 1987). When a prison's internal safety is of concern, courts conduct a more deferential review of the prison officials' actions. Williams v. Burton, 943 F.2d 1572, 1575 (11th Cir. 1991) (citations omitted). Indeed, "[t]hat deference extends to a prison security measure taken in response

to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches in prison discipline." Whitley, 475 U.S. at 322; See also Bell v. Wolfish, 441 U.S. 520, 547 (1979).

### 2. Deliberate Indifference to Serious Medical Condition

Plaintiff's claims concerning his medical treatment after the use of force also invoke the protections of the Eighth Amendment. Thomas v. Bryant, 614 F.3d 1288, 1303 (11th Cir. 2010) (citations omitted).  In order to state a claim for a violation under the Eighth Amendment, a plaintiff-prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Hudson v. McMillan, 503 U.S. 1, 9 (1992) (opining that a prisoner must demonstrate a "serious" medical need "[b]ecause society does not expect that prisoners will have unqualified access to health care. . . .").  This showing requires a plaintiff to satisfy both an objective and a subjective inquiry. Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (citing Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000)).

First, a plaintiff must show that he had an "objectively serious medical need."  Id.  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize

the necessity for a doctor's attention." Id. (citations omitted). "The medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id.

Second, a plaintiff must establish that a defendant acted with "deliberate indifference" by showing both a: (1) subjective knowledge of a risk of serious harm (i.e., both awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and the actual drawing of the inference); and (2) disregard of that risk; and (3) conduct that is more than gross negligence. Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005). "Whether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Goebert v. Lee County, 510 F.3d 1312, 1327 (11th Cir. 2007) (quoting Farmer v. Brennan, 511 U.S. 825, 842 (1994)). "A difference in medical opinion does not constitute deliberate indifference so long as the treatment is minimally adequate." Whitehead v. Burnside, 403 F. App'x 401, 403 (11th Cir. 2010) (citing Harris v. Thigpen, 941 F.2d 1495, 1504-05 (11th Cir. 1991)). A doctor's decision about the type of medicine that should be prescribed is generally "a medical judgment" that is "an inappropriate basis for imposing liability under section 1983."

Adams v. Poag, 61 F.3d 1537, 1547 (11th Cir. 1995); see also Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) (stating that "[m]ere medical malpractice, however, does not constitute deliberate indifference.  Nor does a simple difference in medical opinion.").  "When the claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'" Blanchard v. White Co. Pet. Ctr. Staff, 262 F. App'x 959, 964 (11th Cir. 2008) (quoting Harris, 941 F.2d at 1504).  For example, the Eleventh Circuit previously found "that a doctor's failure to administer stronger medication . . . pending the arrival of [an] ambulance . . . [was] a medical judgment and, therefore, an inappropriate basis for imposing liability under section 1983." Id. (citing Adams v. Poag, 61 F.3d 1537, 1547 (11th Cir. 1995)). Consequently, "[d]eliberate indifference is not established where an inmate received care but desired different modes of treatment." Id.

"Deliberate indifference" includes "the delay of treatment for obviously serious conditions where it is apparent that delay would detrimentally exacerbate the medical problem," where "the delay does seriously exacerbate the medical problem," and where "the delay is medically unjustified."  Harper v. Lawrence Cnty., 592 F.3d 1227, 1235 (11th Cir. 2010) (quoting Taylor, 221 F.3d 1254, at 1259 (11th Cir. 2000).  See also Valderrama v. Rousseau,

___ F.3d____, 2015 WL 1138478 *12-*13 (11th Cir. 2015); <u>McElligott</u> <u>v. Foley</u>, 182 F.3d 1248, 1255 (11th Cir. 1999); <u>Harris v. Coweta</u> <u>County</u>, 21 F.3d 388, 393-394 (11th Cir. 1994); <u>Brown v. Hughes</u>, 894 F.2d 1533, 1537-39 (11th Cir. 1990). A delay of even hours may be deliberate indifference given the "reason for the delay and the nature of the medical need." <u>McElligott</u>, 182 F.3d at 1255. However, "[a]n inmate who complains that delay in medical treatment [rises] to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay." <u>Hill v. Dekalb Regional Youth Detention Center</u>, 40 F.3d 1176, 1187 (11th Cir. 1994), <u>abrogated on other grounds</u> <u>Hope v.</u> <u>Pelzar</u>, 536 U.S. 730 (2002). "Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records." <u>Whitehead v. Burnside</u>, 403 F. App'x 401, 403 (11th Cir. 2010) (citations omitted).

### IV. Application of Law to Facts

#### A. Use of Force claim against defendant Mena

##### 1. Undisputed Facts

It is undisputed that defendant Mena was assigned to Delta dormitory as the housing supervisor and Reiss, who has not been served with process, was his assigned officer. Mena Aff. at 2-3. Plaintiff was housed in Delta dormitory in cell 1204. Motion at 2; Mena Aff. at 3. Around 8:40 p.m., Mena and Reiss were

conducting a security check on the dorm and suspected plaintiff had a cell phone, which is contraband.  Id.; Pl's Exh. A at 7. Plaintiff does not address any of the allegations that the correctional officials saw him running or suspected him of having contraband.  See Response at 1-5.

Around 8:45 p.m., Mena "bear-hugged" plaintiff and then forced him to the ground on the steel-grated floor.  Motion at 6; Mena Aff. at 3-4; Response at 7; Pl's Exh. C at 2-5' Pl's Exh. C, Pl's Declaration at 13; Complaint at 9.  Reiss then applied one, one-second spray of chemical agent from Mena's canister.  Mena Aff. at 4; Pl's Exh. A at 8.  At approximately 8:50 p.m., plaintiff was escorted for a cold-water decontamination shower.  Pl's Exh. A at 8.  At approximately 9:23 p.m., Plaintiff was escorted to the medical department for a post-use-of force examination.  Def's Exh. at 27; Pl's Exh. A at 8.

The injuries plaintiff sustained, for the most part, are also undisputed.  Plaintiff sustained a fractured front tooth that required the dentist to wire it in place and complained that his left hand fingers were hurting.  Pl's Exh. A at 8; Pl's Exh. C, Pl's Declaration at 13.  Plaintiff also claims an injury to his left elbow, back pain, and lacerations on his knee resulted from this use of force.  Response at 7; Pl's Exh. F at 3; Pl's Exh. C, Pl's Declaration at 13.  Defendants, however, point to medical

records showing plaintiff had a pre-existing condition in his elbow.  Pl's Exh. F, Consultant Report dated 10/2/2002.

## 2.  Disputed Facts

### a.  Mena's Version

The parties dispute the facts related to the incidents immediately before the use of force took place.  Mena states that when he and Reiss arrived at plaintiff's cell to search him for the contraband cellphone, plaintiff was attempting to give something to his cellmate, and his cellmate refused.  Plaintiff then put his hands in his pockets.  Mena Aff. at 3.  Mena states that he ordered plaintiff to show him his hands.  Mena Aff. at 3. Plaintiff refused to comply and then "charged" towards Mena.  Id. at 3-4.  Mena states that he stepped to the side, dropping his canister of chemical agents onto the ground, and proceeded to grab plaintiff while telling him to "stop resisting."  Id. at 4.

The parties also dispute the amount of force used by Mena in the take-down.  Mena states that he brought plaintiff down the ground using a take-down maneuver and secured restraints on him. Id.

### b. Plaintiff's version

Contradicting this version of events,[4] plaintiff states that he complied with Mena's orders to show his hands.  Plaintiff also

---

[4]Plaintiff also attempts to fault Mena's varying reports of the use of force incident.  The only way Mena's reports differ

states that he complied with Mena's order to "step out of his cell." Plaintiff provides inmate witness statements in support thereof. Response at 7; Pl's Exh. C at 2, 4.

Plaintiff states that once he stepped out of his cell, Mena "bear hugged" him and proceeded to "body slam" him. Response at 7. Plaintiff provides inmate witness statements that also state that plaintiff was "bear-hugged" and "slammed." Pl's Exh. C at 2-5. Plaintiff states that he asked Mena why he was doing this and asked in Spanish too, but then Mena "body slammed" him for no reason. Response at 7.

### 3. Analysis

As set forth above, "[t]he Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. 1, 9-10. One factor for the court to considering in evaluating whether the use of force was *de minimus* is the extent of the injuries suffered by the inmate. Skrtich, 280 F.3d at 1302. Nevertheless, a court

---

from each other is at which point Mena and Reiss thought plaintiff had contraband (whether they saw him running toward his cell, or whether he noticed the contraband while plaintiff was in his cell) See Mena Aff. at 3 (stating Mena and Reiss noticed plaintiff running towards his cell) and Pl's Exh. A, Report of Force Used at 7(noting that Mena and Reiss saw plaintiff running); with Pl's Exh. A at 2, DR Log No. 576-100687 (noticed plaintiff trying to put "something" in his pants), Id. at 6 (same account as DR Log).

ultimately should decide an excessive force claim "based on the nature of the force rather than the extent of the injury." <u>Wilkins</u> <u>v. Gaddy</u>, 559 U.S. 34, ___(2010).

Here, the record contains a genuine dispute of material fact concerning the context of the use and force and the amount of force used.  Mena asserts that the use of force occurred in response to plaintiff's failure to comply with his orders (after he suspected plaintiff had contraband), followed by plaintiff lunging towards the correctional officers.  Plaintiff asserts that he complied with Mena's orders and was "slammed" to the ground for no reason at all.  Plaintiff provides inmate witness statements in support thereof.  The record evidence in this case does not flatly contradict plaintiff's version of the events; and, his version cannot be discounted, nor the defendant's version credited at this point in the litigation.

Mena provides photographs of where the use of force took place in attempt to show that plaintiff must have lunged towards the correctional officers, particularly in light of where the Complaint alleges the use of force took place (that the use-of-force occurred near the on the steel grated floor and  bars of the second floor shower area).  <u>Compare</u> Complaint at 9 <u>with</u> Response at 7; Pl's Exh. C at 2, 4.  While this argument supports Mena's version, it does not completely discount or necessarily refute Plaintiff's version.  Further, the Court is obligated to liberally

construe *pro se* pleadings.   It is not the role of the Court to make credibility determinations at the summary judgment stage of the proceedings.   The very dispute that remains in this case is whether the force applied was in a good faith effort to restore order, or maliciously and sadistically for the very purpose of causing Plaintiff harm.   Accordingly, Mena's motion is denied with respect to the use of force claim.

However, Mena's motion is granted to the extent plaintiff sues him in his official capacity.   There is no evidence of record that Mena acted pursuant to a policy, or custom.   Finally, to the extent the Complaint alleges a conspiracy claim, there is no served defendant with whom Mena could have conspired, and no plausible factual showing of conspiracy.   <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1332 (11th Cir. 2008) (citations omitted).   Accordingly, the Court finds Mena's motion for summary judgment is due to be granted as to the conspiracy claim and the Eighth Amendment excessive use of force claim in his official capacity, but denied in his individual capacity with respect to the excessive force claim.

**B. Medical Deliberate Indifference Claim against defendant Hopkins**

**1. Undisputed Facts**

It is undisputed that defendant Hopkins was a registered nurse in the Medical Department at Hendry Correctional.   Hopkins conducted a post use-of-force medical examination on plaintiff

around 9:30 p.m. on Saturday, September 25, 2010.  Complaint at 14; Motion at 13-14; Exhs. at 27; Response at 12-13; Pl's Exh. A at 20, Hopkins' Response and Answer to plaintiff's request for admissions; Pl's Exh. B at 16-17, Hopkins' medical entries post use of force.  As set forth above, the injuries plaintiff sustained as a result of the use of force, for the most part, are also undisputed.  See Pl's Exh. A at 8; Pl's Exh. C; Pl's Declaration at 13.  Hopkins' medical notes dated September 25, 2010 at 21:30 reflect a "chipped tooth upper tooth- refer to dental."  Pl's Exh. B at 17.  Also, Hopkins' notes reflect that plaintiff complained of pain on his left hand.  Id. at 16.

**2.  Analysis**

Assuming *arguendo* that plaintiff's medical issue post-use-of-force consisting of a fractured front tooth and pain in his left hand constituted serious medical conditions, the record does not contain a genuine dispute of material fact regarding whether Hopkins acted with deliberate indifference to those medical conditions.  The record reveals that Hopkins saw plaintiff in the Medical Department at approximately 9:30 p.m. on Saturday night and Hopkins believed plaintiff's tooth was "chipped."  The fact that Hopkins' notes reflect a chipped tooth evidences that there was no subjective knowledge of a risk of serious harm (i.e., both awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and the actual drawing of

the inference). Nevertheless, Hopkins' notes reflect that plaintiff was referred to the dentist. Hopkins' referral of plaintiff to the dentist refutes that Hopkins disregarded any knowledge of a risk to plaintiff with conduct amounting to more than gross negligence.

The record further confirms that Plaintiff saw a dentist on Monday, September 27, 2010. Pl's Exh. B at 2. The dentist noted that plaintiff sustained a fractured tooth that required wiring into the correct position. Id. This procedure was completed by noon time. Id. Plaintiff was also prescribed amoxicillin and ibuprofen. Id. The dentist's notes dated October 1, 2010, reveal that plaintiff was "comfortable," and that he was "healing." Id.

To the extent plaintiff faults Hopkins for not referring him to a dentist at 9:30 p.m. on the night (Saturday night) of the incident, plaintiff has neither alleged nor provided evidence that the one-day delay in seeing a dentist exacerbated his medical condition. To the contrary, the October 1, 2010 dentist notes reflect that plaintiff was comfortable and was healing. Accordingly, Hopkins' motion for summary judgment is due to be granted.

Finally, to the extent Plaintiff hoped discovery would reveal the identity of the "John Doe" "Medical Services Director," the Court will dismiss the action as to "John Doe." See docket. Considering summary judgment has been entered in Hopkins' favor

and no medical claim under the Eight Amendment remains, defendant John Doe is dismissed with prejudice.

## V. Plaintiff's remaining pending motions

Plaintiff seeks an enlargement of time to find a new address for defendant Reiss and also requests that the Court order the Secretary of the Department of Corrections to provide the last known address of record for Reiss. See Doc. #83, #84. Defendants filed a response opposing plaintiff's motion, noting that they already searched internal records pursuant to a previous Court order. The records available to defense counsel revealed only an address that corresponded to the now closed correctional officers' housing at Hendry Correctional. Doc. #85.

A review of the docket reveals, on December 13, 2012, the Court directed the Secretary of the Florida Department of Corrections to search its internal records and provide the last address of record for a defendant "Reese." Doc. #13. On January 2, 2013, the Secretary of the Florida Department of Corrections complied with the Court's order by filing a notice that it was unable to identify a defendant with the last name "Reese." Doc. #15. Defendants then filed a motion to dismiss, which the Court granted in part and denied in part on October 18, 2013. Doc. #46. The Court also directed plaintiff to provide a new address for "defendant Reese" on or before November 18, 2013. The Court warned plaintiff that his failure to do so may result in the dismissal of

the defendant pursuant to Federal Rule of Civil Procedure 4(m). See Doc. #46, fn. 2.

Before the November deadline, plaintiff filed a motion seeking assistance as to an address for service on defendant Reese and provided additional information concerning this defendant's identity. See Doc. #53. Upon review of plaintiff's motion, the Honorable Douglas N. Frazier ordered defense counsel to confer with plaintiff within seven days from the date on the order to determine the identity of the defendant "Reese" who allegedly acted with Mena on September 25, 2010 use of force, while working the "4-12 shift," at Hendry Correctional. Doc. #60. On December 10, 2013, it is determined that defendant "Reese" is in fact "Reiss" and the Secretary provides an address in camera so that the Court may direct the United States Marshal to attempt service of process. Doc. #63.

On January 6, 2014, the Court re-directed service of process on defendant Reiss. Doc. #66. The summons issued on February 25, 2014. Doc. #70. Service was returned as unexecuted, however, because the last address of record was actually located at Hendry Correctional, which is now closed. See Docs. #78, #79.

All reasonable efforts to locate and serve defendant Reiss have been exhausted as evidenced by the numerous orders and attempts to serve Reiss to no avail. Indeed, the Court has directed plaintiff to provide more information on defendant

"Reese" and to find an address on no less than two occasions and directed the Secretary of the Department of Corrections to search its records for the last known address of record no less than three times.  Granting plaintiff yet another enlargement of time would be futile because the Court previously granted plaintiff an enlargement of time to find an address for Reiss to no avail. Additionally, the Secretary of the Department of Corrections has already provided last known address of record for Reiss and service was returned as unexecuted.  Consequently, plaintiff's motions are denied.  Defendant Reiss is dismissed pursuant to Federal Rule to Civil Procedure 4(m).

Accordingly, it is hereby

**ORDERED:**

1.   The motion for summary judgment filed on behalf of defendants Mena and Hopkins (Doc. #76) is **GRANTED in part and DENIED in part**.   The motion is **granted** with regard to Defendant Hopkins in its entirety.   The motion is **denied** with regard to Defendant Mena in his individual capacity concerning the excessive of force claim only and otherwise **granted**.

2.   Plaintiff's motion for an enlargement of time and motion to compel address of Reiss (Docs. #83, #84) is **DENIED**.  Defendant Reiss is dismissed pursuant to Federal Rule of Civil Procedure 4(m).

3.    Defendant John Doe, Medical Services Director, is **DISMISSED** with prejudice.

4.    The Clerk of Court is directed to enter judgment as to defendant Harvey pursuant to the Court's October 18, 2013 order.

5.    Plaintiff's motion for copies of all docket entries since the date he filed his Complaint (Doc. #86) is **DENIED without prejudice**.    Plaintiff must specify which docket entries he requires copied and submit the appropriate payment of fifty cents per page copies, and/or clarify whether he means to request a one-time courtesy copy of the docket sheet.

6.    The Clerk of Court shall terminate these pending motions, and enter judgment accordingly.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___31st___ day of March, 2015.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA: alr
Copies: All Parties of Record